IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| John Gallman, | ) | |
| | ) | Civil Action No. 5:16-1808-TMC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff John Gallman ("Gallman"), brought this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner")[1] denying his claim for disability insurance benefits ("DIB") under the Social Security Act ("SSA"). This matter is before the court for review of the Report and Recommendation ("Report") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of social security cases in this district. (ECF No. 25).[2] The magistrate judge recommends affirming the Commissioner's decision denying benefits. Gallman timely filed objections (ECF No. 28), and the Commissioner has responded to those objections (ECF No. 31). Accordingly, this matter is now ripe for review.

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

## I. Background

Gallman filed an application for DIB on January 12, 2010, alleging a disability with an onset date of April 1, 2009. His application was denied initially and on reconsideration. After waiving his right to appear and testify at a hearing before an Administrative Law Judge ("ALJ), the ALJ considered Gallman's claim without a formal hearing and denied his claim. Gallman sought review of the ALJ's decision by the Appeals Council, and on July 23, 2012, the Appeals Council declined to review the ALJ's decision. Gallman then appealed to this court, and on November 21, 2013, Gallman's claim was remanded for a hearing before an ALJ. On July 3, 2014, a hearing was held before an ALJ. Gallman and his attorney were present at the hearing, as well as a Vocational Expert ("VE"). On September 12, 2014, the ALJ denied Gallman's claims finding him not disabled under the SSA from the alleged onset date of April 1, 2009. Gallman again sought review of the ALJ's decision by the Appeals Council, and on April 1, 2016, the Appeals Council declined Gallman's request for review, making the ALJ's decision the final decision of the Commissioner. This action followed.

The ALJ found that Gallman suffered from the following severe impairments: degenerative disc disease and gout. (ECF No. 11-1 at 22). The ALJ found Gallman was unable to perform his past relevant work, but despite some limitations, there were jobs that existed in significant numbers in the national economy that he could perform. (ECF No. 11-1 at 27). Therefore, the ALJ denied Gallman's claims finding him not disabled under the SSA from the alleged onset date through the date of his decision, September 12, 2014. (ECF No. 11-1 at 28).

## II. Standard of Review

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### III. Analysis

In his objections, Gallman contends that the Magistrate Judge erred by finding that the ALJ did not mischaracterize Gallman's work activity in 2013, and did not err in his evaluation of Gallman's credibility.

**A) Work Activity**

Gallman contends that in denying his claim the ALJ relied heavily on evidence that Gallman returned to work in 2013. Gallman contends that the ALJ mischaracterized the work as being more than thirty hours a week until April 2014, and then tapering to 15-20 hours per week. Specifically, the ALJ in his decision stated that "[n]otably, the wage information from the company revealed that the claimant worked more than thirty hours a week until April 2014, and

3

then the hours tapered off to the 15-20 hours testified at the hearing." In her Report, the Magistrate Judge acknowledges that the wage information does not show any work weeks where Gallman worked 30 hours or more. (Report at 18). However, the Magistrate Judge states that the ALJ did not repeat the alleged inconsistency in his RFC analysis and did not use it in his RFC analysis or as a basis for discrediting Gallman. *Id.*

The ALJ noted an inconsistency between the company records and Gallman's testimony as to how many hours Gallman had worked before April 2014. Specifically, the ALJ stated that "the wage information from the company revealed that the claimant worked more than thirty hours a week until April 2014, and then the hours tapered off to the 15-20 hours testified at the hearing." (ECF No. 11-1 at 21). However, the ALJ then noted that Gallman's part-time work still did not rise to the substantial gainful activity level. *Id.*

Reviewing the wage information, the court notes that while the hours Gallman worked varied, before April 2014, there are at least a couple of weeks in which Gallman worked thirty hours or more. (ECF No. 11-4 at 28).[3] And many weeks in which he worked twenty to thirty hours a week, particularly in October and November 2013. (ECF No. 11-4 at 30, 36, 37, 38). As the ALJ noted, Gallman's hours seemed to taper off after April 2013, and then were more in line with the 15-20 hours Gallman testified at the hearing that he worked per week. Moreover, the ALJ did not find that because Gallman worked part-time, this meant he could work full-time.

---

[3]In his brief, Gallman averaged the number of hours he worked for each pay period in 2013, and noted that he worked a little under 23 hours per pay period. This is not the same as stating Gallman never worked more than thirty hours in any one week - which he clearly did in at least two pay periods. The ALJ did not average Gallman's hours worked. He merely stated that Gallman worked over thirty hours some weeks which the record supports. The court notes that the Magistrate Judge mistakenly states that "Plaintiff's wage information does not show any 30-hour plus work weeks because the records show hours worked at two-week intervals . . ." (Report at 18).

4

Accordingly, the court finds that the ALJ's RFC determination is supported by substantial evidence, and Gallman's objection is overruled.

**B) Credibility**

Gallman contends that the ALJ failed to properly consider his repeated reports of pain without relief from treatment in assessing his credibility. Gallman alleges that the ALJ did not properly apply the "pain rule" and his decision is not supported by substantial evidence.

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides to discredit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985). The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints, such as fatigue. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id*. After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595.

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If the ALJ points to substantial evidence in support of his

decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency)

The ALJ generally followed that process in this case. As the Magistrate Judge found, the ALJ properly relied upon inconsistencies between Gallman's testimony and objective medical evidence and his daily activities in discrediting Gallman. He noted that Gallman testified that he wore a back brace and used a cane at work, but that at a recent exam, it was noted that Gallman had a normal gait, normal strength in his legs, and negative straight leg raises, and there was no mention of the use or need of a cane. The ALJ then noted that although Gallman had originally complained to his doctor that his medications made him sleepy, the dosage was reduced, and Gallman was able to perform part-time work.

In his objections, Gallman alleges that the ALJ did not properly apply the "pain rule." Under the Fourth Circuit's "pain rule," it is well established that subjective complaints of pain and physical discomfort can give rise to a finding of total disability, "even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987). Specifically, Gallman contends that the ALJ failed "to consider and abundance of statements about pain or other symptoms reported by Gallman," and the ALJ's conclusion that Gallman's pain was managed with pain medication is not supported by the evidence. Further, Gallman contends that the ALJ failed to consider the intensity or degree of pain. Finally, Gallman argues that the ALJ erred in failing to resolve a conflict based upon Gallman's testimony that he used a cane and evidence in the record that he used a cane and the ALJ's reliance on a record that makes no comment about a cane.

As for Gallman's pain, contrary to his objections, the ALJ specifically conducted the proper two-step analysis. The ALJ first noted that he found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . " (ECF No. 11–1 at 25.) The ALJ then proceeded to evaluate whether Gallman's claims appear credible and concluded that Gallman's pain was stable and under good control without significant adverse side effects. Gallman's objections are more a disagreement with the ALJ's conclusion, rather than an objection to the ALJ's analysis method. However, the court agrees with the Magistrate Judge that the ALJ properly conducted the credibility analysis, and cited substantial evidence to support his finding that Gallman's subjective complaints were not entirely credible.

As for the ALJ's failure to resolve a conflict about Gallman's use of a cane, the ALJ relied on the most recent medical examination at that time and noted that Gallman had a normal gait, and no mention of the use or need for an assistive device. Social Security Ruling 96-9p requires, inter alia, consideration of the impact of medically required hand-held assistive devices on the unskilled sedentary occupational base. SSR 96–9p, 1996 WL 374185, at *6-7. However, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations. . . .)." *Id.* at *7. While Gallman testified he was using a cane and there is a notation in his records that he was using a cane, the record does not reflect that Gallman was ever prescribed a cane. And moreover, the record contains evidence upon which the ALJ relied that a cane was not medically required - a normal gait and strength and negative straight leg raises.

Gallman is essentially asking the court to read the evidence differently, which is not the role of this court. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001) (stating that the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency) (citation omitted). Reviewing the entire record and the ALJ's decision, the court agrees with the Magistrate Judge that the ALJ did not err in his credibility determination.

### IV. Conclusion

Having reviewed the record under the appropriate standards, as set out above, the court concurs with the result reached by the magistrate judge in her Report. The ALJ's decision is supported by substantial evidence. Therefore, the court adopts the Report and the Commissioner's decision is **AFFIRMED**.[4]

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

August 10, 2017
Anderson, South Carolina

---

[4] To the extent the Magistrate Judge misinterpreted the wage information as discussed herein, the Report is adopted only in result.